PEOPLE'S STATE BANK v. DAVIS et al.
(No. 6869.)

(Court of Civil Appeals of Texas. Galveston.
May 7, 1915.)

BANKS AND BANKING &#9901;126 — NATURE OF
DEPOSIT—RIGHT TO CHARGE BACK CREDITS.

Plaintiffs, being the owners of timber, sold it to R. By an arrangement with defendant bank, it was to finance R.'s undertaking to the extent of 80 per cent. of the value of each car load of lumber cut by him and shipped through the bank. The invoice and bill of lading for each car was indorsed by R. and delivered to the bank, which then, upon the orders of R., pursuant to his contract with plaintiffs, deducted therefrom the amount due to plaintiffs and entered it to their credit. Failing to collect from the consignees of the lumber the invoice value thereof, defendant charged back to plaintiffs the amount which it had credited to their account. *Held* that, defendant having paid plaintiffs with full knowledge of the facts by crediting their account, the relation of debtor and creditor was established, and the bank was unconditionally liable to plaintiffs for the amounts so credited.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 305, 309; Dec. Dig. &#9901; 126.]

Appeal from District Court, Jasper County; A. E. Davis, Judge.

Action by G. W. Davis and another against the People's State Bank. From a judgment for plaintiffs, defendant appeals. Affirmed.

H. C. Howell, of Jasper, for appellant. Bisland & Bruce, of Orange, for appellees.

McMEANS, J. G. W. Davis and T. M. Hughes, composing the firm of Cow Creek Lumber Company, brought this suit against the People's State Bank to recover $1,295.09 alleged by them to have belonged to them and to have been converted by the bank to its own use and benefit. A trial before the court without a jury resulted in a judgment for plaintiffs, and defendant has appealed.

The court upon proper request reduced to writing and filed its findings of fact; and, as none of them are attacked by appellant as not being supported by the testimony adduced upon the trial, we make our findings of fact therefrom.

Plaintiffs, Davis and Hughes, owned a small sawmill in Newton county which they, in the fall of 1908, leased to S. C. Rigney and one Wells. They also owned pine timber upon land around the mill, which they sold to Rigney and Wells at $7.25 per thousand feet, delivered on the skidway at the sawmill. About March 1, 1909, Rigney took over and assumed the contract between Davis and Hughes and Rigney and Wells, and Wells was released by all the parties to the contract. Prior to that time the bank was running an account with Rigney and Wells, and after that date this account was continued in the name of S. C. Rigney. After the release of Wells, Rigney operated the sawmill and sawed into lumber the pine timber that was delivered to him at the mill by Davis and Hughes under the contract, and shipped out the same. The bank knew that Rigney had rented the sawmill, and knew that he was buying the timber from Davis and Hughes, and it had entered into an arrangement with Rigney, whereby the bank agreed and undertook to finance him in his sawmill venture to the extent of 80 per cent. of each car load of lumber shipped through the bank. As Rigney would ship each car load he would indorse the invoice and bill of lading and deliver the same to the bank, and at the same time would deliver to Davis and Hughes, under their firm name of Cow Creek Lumber Company, an order upon the bank reading as follows:

"People's State Bank, Kirbyville, Texas.— Gentlemen: Please credit Cow Creek Lumber Company as follows: [Giving the car number, amount of feet and price per thousand].

"[Signed] Yours truly, S. C. Rigney."

Upon the receipt of these orders the bank would credit the account of the Cow Creek Lumber Company with the amounts specified therein. Prior to the 15th of June, 1909, Rigney shipped through the bank 19 cars of lumber consigned to various parties, invoices and bills of ladings of all of which were indorsed to and delivered to the bank, and for each of the 19 cars Rigney gave an order in favor of the Cow Creek Lumber Company for the amount which he owed for the lumber, which, for the 19 cars covered by said orders, amounted to $1,295.09, and the bank honored all of said orders and passed said sum to the credit of Davis and Hughes in their said firm name of Cow Creek Lumber

Company. At the time of the shipment of the 19 cars Davis and Hughes and Rigney were operating under a contract which provided that upon presentation of the invoices to the bank the amount due Davis and Hughes for the timber represented by each car load should be deducted from the account of Rigney and credited to the account of the Cow Creek Lumber Company, and this contract was prepared by the cashier of the bank, and the bank had full knowledge of its terms, but was not a party thereto. When the bank received the invoices it undertook to collect from the consignees the amount thereof, and when collected it would place the same to the credit of Rigney, less the amount it had credited to the Cow Creek Lumber Company upon Rigney's orders. Davis and Hughes had no understanding with the bank by which they were to become responsible for the payment of the invoice price of the lumber shipped. They were permitted by the bank, and did without question, draw against the amounts that were credited by the bank to the account of the Cow Creek Lumber Company. On September 29, 1909, the bank having failed to collect from the consignees of lumber shipped by Rigney the invoice value of the 19 cars heretofore mentioned, it charged back to Davis and Hughes, or the Cow Creek Lumber Company, the $1,295.09 with which it had credited their account upon the receipt of the invoices and orders from Rigney. To this Davis and Hughes strongly objected, and many times prior to the institution of this suit sought to have the amount credited back by the bank to their account, but the bank refused to do so. After so charging back said sum to the Cow Creek Lumber Company, the bank collected $751.28 from the consignees of said 19 car loads, with which sum it credited the account of the Cow Creek Lumber Company, leaving a balance uncredited of $543.81, for which, and interest, judgment was rendered in favor of plaintiffs.

Appellant by its first assignment of error complains that the judgment in favor of plaintiffs was erroneous, because the bank, as shown by the evidence, received the bills of lading and invoices from Rigney for the lumber shipped by him as a collecting agent only, and that such collections were handled by the bank in accordance with the usage and custom of banks and in the ordinary course of banking business; that due diligence was used by the bank in making such collections; that in accordance with the usage and custom of banks, and in the ordinary course of banking business, the defendant, on receipt from Rigney of the invoices and bills of lading, accompanied by memoranda showing the amount due the Cow Creek Lumber Company, credited such items to said lumber company, subject to collection, and upon the failure of the bank to collect for a portion of the consignments it had the right to charge back to the account of the lumber company the uncollected items with which the lumber company had been credited. By its proposition under the assignment appellant asserts that:

"Where a bank receives paper for collection, which is credited to the depositor as cash, the bank is not liable to the depositor for the amount thereof, if the paper is worthless or is subsequently dishonored."

The proposition contains an abstractly accurate statement of the law, and if the facts were as stated in the assignment, there would be no difficulty in reaching the conclusion that the judgment should be reversed. In argument, appellant in its brief says that it should be borne in mind that this is not a contest between the bank and Rigney; that as between him and the bank no question is made that the bank received and handled the invoices and bills of lading as collections only; that the appellees contend that the same relations did not exist between them and the bank, and that under the facts proved the bank should be held liable to them absolutely and unconditionally for the amount due them for the timber, regardless of whether collections thereof were made by the bank; that this contention was sustained by the trial court, and it was upon that theory that the judgment was rendered in favor of appellees, and that if this theory is correct, the judgment should be affirmed, but if incorrect it should be reversed. We do not think that the rule of law stated in the proposition has any application whatever to the facts of this case. The bank had agreed to finance Rigney to the extent of 80 per cent. of the value of each car load of lumber shipped by him where the invoices and bills of lading were indorsed and delivered to the bank. The bank knew of the arrangement between Rigney and Davis and Hughes, and, so knowing, it accepted orders from Rigney, directing the payment to Davis and Hughes of the amounts specified in them, which the bank knew was for the payment of the timber out of which the lumber was manufactured, and these amounts were paid to Davis and Hughes by crediting their account therewith, against which the latter were permitted to draw at their convenience. Having agreed to finance Rigney to the extent of 80 per cent. of the value of each shipment made under the circumstances stated, and the shipments in question having been made under such circumstances, and the bank under its agreement to finance Rigney having paid to Davis and Hughes in the manner stated the amount due them for the timber from which the lumber was manufactured, it was in no position, after having so paid them, to charge back to their account the amount so paid, and thus recoup itself for losses that it might sustain by reason of failure to collect from the consignees. Davis and Hughes, under these circumstances, did not occupy toward the bank the relation of one who deposits paper with

the bank for collection, and who is given immediate credit therefor when such deposit is made, but by crediting their account with the amount of the orders given by Rigney the relation of debtor and creditor was at once established between them and the bank, and the bank thereupon became unconditionally liable to them for the amounts thereof.

What we have said above sufficiently disposes of the second proposition under the first assignment of error, as well as the second and only other assignment.

We find no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.